UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEBORAH CARMICHAEL : | |
| : | |
| VS. : | |
| : | |
| ADVANCED NURSING & REHABILITATION : | |
| CENTER OF NEW HAVEN, LLC AND : | |
| ADVANCED CENTER FOR NURSING & : | |
| REHABILITATION, LLC : | AUGUST 30, 2019 |

## AMENDED COMPLAINT

**PRELIMINARY STATEMENT**

This is an action to redress the deprivation of rights secured to the plaintiff by the Constitution and laws of the United States and the State of Connecticut. The plaintiff, Deborah Carmichael, brings this action against defendant Advanced Nursing & Rehabilitation Center of New Haven, LLC (hereinafter "Advanced Nursing") and Advanced Center for Nursing & Rehabilitation, LLC, (hereinafter "Advanced Center") pursuant to the Americans with Disability Act, 42 U.S.C. § 12101, et seq. (hereinafter "ADA") and for retaliation pursuant to Title VII of the Civil Rights Act of 1964 and 1991, 42 U.S.C. § § 2000e et. seq. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 1367. Plaintiff has complied with all of the procedural requirements for suit, including bringing a claim before the EEOC, and receiving her release of jurisdiction.

**COUNT ONE:        DISCRIMINATION IN VIOLATION OF ADA**

1.      The plaintiff Deborah Carmichael is a resident within the State of Connecticut and at all times relevant to this complaint was employed by the defendant(s) as a Licensed Professional Nurse.

2.      Defendants are private employers doing business within the State of Connecticut, under its laws, and are employers as that term is defined by the ADA and Title VII.

3.      Plaintiff began employment with defendant(s) on October 13, 2016.  She enjoyed her work responsibilities, was educated, licensed and qualified for the position, and performed in an above average manner never receiving any job performance deficiencies until after her son became disabled and plaintiff filed a complaint.

4.      In April of 2017, plaintiff's son was involved in a serious accident while he was travelling on a bicycle and hit by an automobile.  He was hospitalized and diagnosed with serious traumatic brain injury and seizures.

5.      On the date of the accident, plaintiff was working at defendants' location and her son was brought to a hospital directly across the street.  Plaintiff was informed that she needed to get to the hospital immediately.  Despite being notified that her son was in a life altering accident, plaintiff's supervisor refused to let her leave work to attend to him in the hospital.  Plaintiff was told by the

supervisor that she did not know how to pass the medications from the computer and could not find any coverage. Plaintiff stayed at work for the defendant for the next several hours while her son was in the emergency room. Finally, plaintiff was so panicked about her son that she gave the keys to her supervisor and said she absolutely had to go to her son. Plaintiff then walked across the street to the hospital but was told that she could not see her son because he had to be taken into emergency surgery and they could not wait for her any longer.

6. The plaintiff only took one weekend off after her son's accident and she was required to use her vacation pay. She was not given any sick time or any other type of leave to attend to her son and Plaintiff did not request any further time off thereafter for fear that she would lose her position.

7. During this time period, the plaintiff needed to complete her recertification as a Licensed Practical Nurse. The time frame for recertification was 90 days. Although defendant was fully aware of the crisis plaintiff and her son were experiencing, plaintiff received continual harassing and threatening text messages from administration to complete the recertification immediately. Despite the fact that she had 90 days to complete the recertification, she was removed from the work schedule on July 1st and 2nd of 2017 and advised that she could not report back to work until she completed the recertification.

8. Defendant did not harass or take said adverse employment action against similarly situated employees, who were subject to the same supervision, performance evaluation and discipline standards,

who also needed to complete their recertification.  These employees were not associated with a disabled person.

9.      At the end of June, 2017, the plaintiff met with the Assistant Director of Nursing, Michelle.  In that meeting plaintiff informed defendant that her son was going to be discharged from the hospital and would require 24-hour around the clock care.  Plaintiff inquired whether defendants would allow her to bring her son to work in an emergency situation where there was an issue with scheduling his care.  At no time did plaintiff receive a response regarding her request to bring her son to work should an emergency arise.

10.     Plaintiff was fully aware that many employees of defendant would bring their children into work because defendants needed them to work, but they did not have childcare.  These individuals, including but not limited to, Tasha and Sam, were subject to the same supervision, performance evaluation and discipline standards as the plaintiff.  The children that were brought to work by the other employees ranged from the age of 3 to 10 years old and required the same amount if not more supervision than plaintiff's son.

11.     On July 10, 2017, plaintiff found out at the last minute that the care she had arranged for her son would be running late.  The plaintiff did not want to call out sick from work at such a late hour, and instead took her son to work.  She made arrangements for him to be picked up as soon as possible.

Plaintiff had her son sit in a chair outside an empty resident's room and still be in viewing distance.  He was quietly using his phone and causing no disruption.

12. Shortly after plaintiff and her son came to work, plaintiff was approached by Michelle Morse and Pat King from Administration.  Plaintiff informed them that her childcare for her son was running late but would be there shortly to pick him up.  In response Ms. King stated that "he cannot be here."

13. Plaintiff responded that she was sorry and that she would shut down her work area and take her son home as there was no other option for her.  Ms. King then questioned the plaintiff saying "so you are just going to abandon your patients?".  Then plaintiff was told to report off the floor for a meeting.

14. At that point plaintiff already had medication taken out of the refrigerator for a patient so she quickly administered the medication and then proceeded to lock up the medication cart.

15. Upon returning to the cart, the plaintiff was confronted by Michelle Morse who began yelling at the plaintiff in a threatening manner saying she was to stop giving medications and to lock up the cart.  It should be noted that when plaintiff's son was admitted to an emergency room just months earlier, where plaintiff did not know if he was alive or dead, defendant would not let her leave the medication cart.  When plaintiff went into the meeting she began apologizing about the situation and her son to which Michelle Morse began yelling "we all know about your son and your problems Deborah."

16. Plaintiff continued to apologize but told the defendant she did not understand why this was an issue because many other employees had brought their children into work without incident.  Plaintiff

told her superiors that she believed she was being held to a different standard. Michelle then advanced towards the plaintiff, getting so close to her that their noses touched. Plaintiff turned to look at Ms. King and asked "what do you want me to do now?" Plaintiff was then told to complete her medication cart and to go home.

17. The following day plaintiff was suspended without pay pending an investigation. Plaintiff's discipline was conducted by defendants' agents and/or servants, including but not necessarily limited to Pat King, Administrator, Marley West, Director of Nurses, Michelle Morse RN, and Debra Blasczyk. HR.

18. On July 18, defendants, by and through their agents and/or directors, brought the plaintiff into another meeting and told her she would be given a "second chance". Plaintiff complained about the manner in which she was being discriminated against but was cut off and not allowed to continue. Plaintiff also requested that an investigation be done regarding the assault by Michelle Morse, but Ms. King stated, "we are not even going to discuss that."

19. The plaintiff then filed a grievance with her union on July 19, 2017.

20. On August 24, 2017, the plaintiff was completing documentation at the end of her shift. Two LPN's who were arriving for their shift, taking over for the plaintiff, were walking down the hallway (Helen and Mary) and noticed that a resident had fallen in her room. Helen yelled down the hallway to the plaintiff that the resident had fallen.

21. Plaintiff then requested that the two CNA's who were on the floor to go and assist Helen and Mary while she went to get the necessary documentation paperwork.

22. When plaintiff returned to the desk, Helen and Supervisor Ruth were at the nurse's station.

23. Plaintiff informed the supervisor that Mary and Helen had been with patient while she retrieved the paperwork. However, apparently both Mary and Helen left the patient unattended while plaintiff was retrieving the paperwork.

24. Since it was the end of plaintiff's shift, she was told to wrap things up and go home.

25. On August 24, 2017, the plaintiff was notified via a voice mail that she was being terminated as a result of the not attending to the fallen resident. None of the other individuals involved, who actually witnessed the fallen resident and attended to the resident, and were similarly situated to the plaintiff, were disciplined in any manner. Plaintiff was singled out for this adverse employment action on the basis of her association with her son who is disabled. Plaintiff's termination was determined by defendants' agents and/or servants, including but not limited to, Pat King, Administrator, Marley West, Director of Nurses, Michelle Morse RN, and Debra Blasczyk. HR.

26. At all times plaintiff was qualified to perform the duties of her position as a Licensed Practical Nurse.

27. The plaintiff suffered adverse employment action as she was harassed, subject to loss of pay, disciplined and ultimately terminated from her employment.

28. At all times the defendant knew that plaintiff's son suffered from a disability namely a traumatic brain injury.

29. The defendant's actions were based on the discriminatory belief that plaintiff's association with her disabled son would cause her to be distracted or inattentive at work due to her son's disability.

30. As a result of defendant's discriminatory actions, plaintiff was caused to suffer damages, including, lost wages, medical expenses, attorney's fees, punitive damages and emotional distress.

**COUNT TWO:**            **DISCRIMINATION IN VIOLATION OF TITLE VII - RETALIATION**

Paragraphs one through twenty-five of Count One are hereby incorporated and made fully paragraphs one through twenty-five of Count Two.

26. The plaintiff complained to her superiors regarding the discrimination that she was subjected to and filed a grievance with her union. Her superiors refused to acknowledge her complaints and in fact specifically told the plaintiff that they would not be addressed.

27. As direct and proximate cause of plaintiff's complaints she was terminated from her employment all in retaliation for opposing the unlawful discrimination.

28. The plaintiff's termination took place approximately one month after she complained directly to her superiors about their discriminatory conduct and filed a grievance with her union.

28. As a result of defendant's retaliatory actions, plaintiff was caused to suffer damages, including, lost wages, medical expenses, attorney's fees punitive damages, and emotional distress.

PLAINTIFF DEBORAH CARMICHAEL


BY:     /s/Michelle N. Holmes
        Michelle N. Holmes
        Federal Bar No.:  CT20014
        One Exchange Place
        21 West Main Street
        Waterbury, CT  06702
        203-596-1091
        203-596-1093 facsimile
        michelle@mholmeslaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEBORAH CARMICHAEL | : |
| | : |
| VS. | : |
| | : |
| ADVANCED NURSING & REHABILITATION | : |
| CENTER OF NEW HAVEN, LLC | :   AUGUST 30, 2019 |

## DEMAND FOR JURY TRIAL

The plaintiff hereby demands a trial by jury as to all issues in this action.

PLAINTIFF DEBORAH CARMICHAEL


BY:____/s/Michelle N. Holmes_____
    Michelle N. Holmes
    Federal Bar No.: CT20014
    One Exchange Place
    21 West Main Street
    Waterbury, CT  06702
    203-596-1091
    203-596-1093 facsimile
    michelle@mholmeslaw.com